UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARLENE'S TRUCK SALVAGE,

    Plaintiff,

v.

    Case No. 23-cv-11314

    HON. MARK A. GOLDSMITH

NORTHFIELD/NORTHLAND
INSURANCE COMPANY,

    Defendant.

_____/

**OPINION & ORDER**
**(1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 24)**
**AND (2) DENYING DEFENDANT'S MOTION TO EXCLUDE AS MOOT (Dkt. 25)**

Before the Court are Defendant Northfield/Northland Insurance Company's motion for summary judgment (Dkt. 24) and motion to exclude Plaintiff Arlene's Truck Salvage's (ATS) proposed experts (Dkt. 25).[1] For the reasons that follow, the Court (i) grants Northfield's summary judgment motion and (ii) denies as moot its motion to exclude ATS's proposed experts.

### I. BACKGROUND

ATS, a vehicle scrapping and salvaging business, and Northfield, a commercial insurer, are parties to an insurance policy contract providing coverage for ATS's building located in Ypsilanti, Michigan. Compl. ¶¶ 4, 9 (Dkt. 4); Def. Statement of Material Facts (SOMF) ¶ 1.

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motions, the briefing includes ATS's response to the summary judgment motion (Dkt. 28) and response to Northfield's motion to exclude ATS's proposed experts (Dkt. 26) and Northfield's reply in support of its motion for summary judgment (Dkt. 30) and reply in support of its motion to exclude (Dkt. 27).

1

In May 2022, ATS discovered physical damage to its building that rendered it structurally unsound. Compl. ¶¶ 12, 15. ATS submits that the damage was caused by a combination of (i) the nearby pile-driving activities at a neighboring property, (ii) a sinkhole, and (iii) a Detroit Thomas Edison (DTE) utility pole attached to the building. Id. ¶ 13; Resp. to Mot. for Summ. J. at 9–10. ATS sought insurance coverage from Northfield for the damage to its building. Compl. ¶ 14. Following its investigation of ATS's claim, Northfield denied coverage, asserting that the damage was caused by "rising or shifting" soil conditions, which is excluded from coverage. Pl. SOMF ¶ 7.

ATS filed this action, alleging breach of contract based on Northfield's denial of coverage under the policy. Compl. ¶¶ 7–33.[2] Northfield moves for summary judgment on ATS's claim. In addition to the summary judgment motion, Northfield moves to exclude ATS's proposed experts Yogi Anand and David Dowling.

The Court begins by addressing the summary judgment motion. Because the Court concludes that Northfield is entitled to summary judgment for the reasons explained below, it need not address the merits of Northfield's motion to exclude and denies that motion as moot.

## II. ANALYSIS[3]

The parties dispute whether damage to the building is a covered loss under the policy. Under Michigan law, which governs in this diversity case, "insurance policies are subject to the

---

[2] ATS has dropped its claims for quantum meruit/unjust enrichment and promissory estoppel (Counts II and III). Resp. to Mot. for Summ. J. at 15.

[3] In assessing whether a party is entitled to summary judgment on any claim, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

same contract construction principles that apply to any other species of contract." Rory v. Continental Ins. Co., 703 N.W.2d 23, 26 (Mich. 2005). "Exclusionary clauses are construed strictly in favor of the insured, but clear and specific exclusions will be given their effect. However, an exception to an exclusion operates to preserve coverage despite the exclusionary clause. An exception to an exclusion does not grant coverage, but only operates to preserve coverage despite the exclusion." Freeway Drive Invs., LLC v. Emps. Mut. Cas. Co., No. 16-12677, 2017 WL 6452232, at *6 (E.D. Mich. Dec. 18, 2017) (punctuation modified). The insured bears the burden to establish that that its claim falls within the terms of the policy, and the insurer has the burden to prove that a policy exclusion applies. Id. The insured has the burden of proof of showing that the exception to the exclusion applies. Harrow Prod., Inc. v. Liberty Mut. Ins. Co., 64 F.3d 1015, 1020 (6th Cir. 1995).

ATS argues that its loss is covered under the policy because it was caused in whole or part by (i) the pile-driving activity at a neighboring property, (ii) a sinkhole, or (iii) the utility pole attached to the building—each of which ATS submits are covered causes under the policy that do not fall under an exclusion. See Resp. to Mot. for Summ. J. at 9–16. Northfield disputes this. It argues that ATS is not covered under the policy because of the "Earth Movement" exclusion and "anti-concurrent, anti-sequential cause" provision. Mot. for Summ. J. ¶ 8.

The Court proceeds by first discussing the "Earth Movement" exclusion and its application to the alleged pile driving and sinkhole activity, and next discusses the "anti-concurrent, anti-sequential cause" provision and its application to ATS's claim related to the DTE utility pole.

### A. "Earth Movement" Exclusion

The policy provides that Northfield "will pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." Policy at PageID.852 (Dkt. 24-1). A loss is covered if it is "direct physical loss unless the loss is excluded

3

or limited in this policy." Id. at PageID.868.  One exclusion to the general policy is the "Earth Movement" exclusion.  See id.  Under this exclusion, Northfield is not obligated to pay for damage indirectly or directly caused by "Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty . . . ."  Id.  The policy further states that the exclusion apples "regardless of whether" the earth movement "is caused by an act of nature or is otherwise caused."  Id.  "Sinkhole collapse"—an exception to this exclusion—means "the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite."  Id. at PageID.877.

ATS submits that the "Earth Movement" exclusion does not apply because the damage to its building was caused either by (i) human activities, namely, the installation of pilings at a neighboring cement plant, and/or (ii) sinkhole collapse.  Resp. to Mot. for Summ. J. at 9.  The Court addresses each argument in turn.

**1. Manmade or Natural Causes**

The plain language of the policy forecloses ATS's argument that man-made pile-driving activity renders the exclusion inapplicable to its asserted loss.  As provided in the policy, the exclusion applies whether the earth movement is "caused by an act of nature or is otherwise caused."  Policy at PageID.868.

As Northfield points out, Michigan courts' treatment of similar earth-movement exclusions further undermines ATS's position.  See Br. Supp. Mot. for Summ. J. at 13–14 (citing Home-Owners Ins. Co. v. Andriacchi, 903 N.W.2d 197, 203 (Mich. Ct. App. 2017)).  In Andriachhi, the Michigan Court of Appeals examined a policy that excluded "[a]ny earth movement (other than sinkhole collapse), such as an earthquake, landslide or earth sinking, rising or shifting . . . ."  Andriacchi, 903 N.W.2d at 203.  The insured argued that the exclusion did not apply to building

4

damage resulting from nearby street repairs because the exclusion applied only to "naturally occurring events . . . such as earthquake, landslide or earth sinking, rising or shifting." Id. at 203. Rejecting this interpretation, the court held that the language of the exclusion was clear because it applied to "any earth movement, be it the result of natural phenomena or the upshot of human activities." Id. at 207.

Like the exclusion in Andriacchi, the "Earth Movement" exclusion here applies regardless of whether the movement was the result of a natural cause. Policy at PageID.868. Thus, even if ATS is correct in its assertion that the earth movement that damaged the building was the result of human activities such as pile driving, that fact does not establish an exclusion from coverage.

**2. Sinkhole Collapse**

Although not entirely clear from its briefing, ATS also appears to maintain that the damage to its building was caused by sinkhole collapse and, therefore, falls within the exception to the "Earth Movement" exclusion. Resp. to Mot. for Summ. J. at 9 (noting that "even [Northfield's] own expert . . . cannot exclude a sinkhole" as the cause of the damage).

The record is devoid of any evidence to support the view that the loss was caused by sinkhole collapse. Even if the Court were to credit ATS's expert reports, neither report supports ATS's assertion that the damage was caused by sinkhole collapse. Although Anand's report notes "sink holes" in the concrete flooring of the building, such references are merely descriptive observations of the condition of the building's concrete floor. See Anand Report at PageID.1553 (Dkt. 28-6). Anand's report does not conclude that sinkhole collapse—as that term is defined under the policy—caused the structural damage complained of by ATS. And the findings of ATS's other proposed expert cut against its position: Dowling's report concludes that "the damage is not [caused by] a naturally occurring sinkhole, but non-environmental conditions." Dowling Report at PageID.1561 (Dkt. 28-7).

5

Lacking its own evidentiary support showing sinkhole collapse, ATS attempts to rely on Northfield's expert report by Fares Ghannam. It asserts that the Ghannam report is unable to "exclude a sinkhole" as the cause for the loss. Resp. to Mot. for Summ. J. at 9. This argument mischaracterizes Ghannam's findings. The report states that the "observed shallow-depth void in the soil was inconsistent with having been caused by sinkhole or associated sinkhole activity." Ghannam Report at PageID.901 (Dkt. 24-3). While the report does allow that "[d]etermination of the exact cause" of the earth movement would require further "subsurface geotechnical evaluation," id. at PageID.906, such a finding provides no support for concluding that the damage was caused by sinkhole collapse.

Given the absence of evidence as to sinkholes, ATS has failed to raise an issue of material fact as to whether the damage to its building was caused by sinkhole collapse.

**B. DTE Utility Pole**

In addition to the pile-driving activities and sinkhole collapse, ATS contends that a DTE utility pole attached to its building contributed to its loss by damaging the building's rafters, which, in turn, "open[ed] the roof line [and] allowed water to enter from the roof and caused damage . . . ." Resp. to Mot. for Summ. J. at 10–11. Northfield submits that the policy's "anti-concurrent, anti-sequential cause" provision precludes ATS's claim. Br. Supp. Mot. for Summ. J. at 20. The Court agrees with Northfield.

The "anti-concurrent, anti-sequential cause" provision provides that Northfield will not pay for "loss or damage caused directly or indirectly" by earth movement "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Policy at PageID.868. This clause operates to exclude coverage for loss or damage regardless of any other cause or event that contributes concurrently or in any sequence to the loss. See Zedan v. SGL No. 1 Ltd., 527 F. Supp. 3d 937, 941 (E.D. Mich. 2021).

Application of this clause is fatal to ATS's DTE utility pole theory. Even were the Court to accept as true that both the DTE utility pole (a covered cause) and the pile driving (an excluded cause) contributed to ATS's loss, the "anti-concurrent, anti-sequential cause" provision precludes ATS from coverage.

Resisting this conclusion, ATS argues that the clause should not apply because it is "non-specific." Resp. to Mot. for Summ. J. at 13. It contends—without supporting citation—that the phrases "regardless" and "any" render the clause "overbroad." Id. But courts applying Michigan law have enforced nearly identically phrased "anti-concurrent, anti-sequential cause" provisions. See e.g., Zedan, 527 F. Supp. 3d at 941 (holding that a policy providing that coverage for "loss or damage caused by one of the Basic Form Exclusions is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss" precluded insured's claim for fire losses alleged to be caused both by renovation work (an uncovered loss) and a fire (a covered loss)).

ATS's attack on the clause as overbroad is inconsistent with the "default rule," under which a loss that is the result of both a covered cause and excluded cause is deemed not covered, even in the absence of an "anti-concurrent, anti-sequential cause" provision. As the Sixth Circuit has explained, "the default rule under Michigan law is that a loss is not covered when it is concurrently caused by the combination of a covered cause and an excluded cause . . . . the absence of an anti-concurrent, anti-sequential clause . . . does nothing to alter Michigan's default rule that a loss is not covered when it is caused by a combination of a covered risk and an excluded risk." Iroquois on the Beach, Inc. v. Gen. Star Indem. Co., 550 F.3d 585, 588–589 (6th Cir. 2008) (emphasis omitted). The Court may not find that the parties intended to alter Michigan's default rule on the ground that the policy's "anti-concurrent, anti-sequential cause language" was without adequate specificity. Zedan, 527 F. Supp. 3d at 943 n.5 ("Iroquois demonstrates that a court may not find

7

that the parties intended to 'alter' Michigan's default rule on the ground that they omitted 'anti-concurrent, anti-sequential cause' language from one exclusion and included such language in another exclusion.").

ATS also argues that the "anti-concurrent, anti-sequential cause" provision is inapplicable because its loss related to the DTE utility pole is "independent and distinct from" the pile-driving activities. Resp. to Mot. for Summ. J. at 14. In other words, ATS argues that it asserts claims related to two insurable losses—a loss from the pile driving activity and a loss from the DTE utility pole. See id.

ATS's argument is belied by its own pleadings. Its complaint alleges a single loss, asserting: "on or about [May 20, 2022], . . . [ATS] suffered a property loss at [its] property which has continuously worsened destroying significant portions of the interior and exterior of the commercial building . . . ." Compl. ¶ 12. The complaint further alleges that the causes of that loss include "sink holes, third party causing movement of soil, improper installation to structural portions of the building . . . ." Id. ¶ 13. Thus, ATS's complaint alleges one loss resulting from multiple causes. It cannot assert a new claim through argument in its response to a motion for summary judgment. See Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (explaining that a plaintiff cannot "expand its claims to assert new theories" in a response to summary judgment).

Because there is no disputed material fact that ATS's claimed loss was caused in part by an excluded cause (earth movement) and in part by a covered cause (DTE utility pole), ATS's claim based on the DTE utility pole is precluded by the policy's "anti-concurrent, anti-sequential cause" provision. And because ATS has failed to raise a disputed issue of material fact as to whether it is entitled to coverage under the policy agreement, Northfield is entitled to summary judgment on ATS's breach of contract claim.

## III. CONCLUSION

For the foregoing reasons, the Court (i) grants Northfield's motion for summary judgment (Dkt. 24) and (ii) denies as moot Northfield's motion to exclude Arlene's Truck Salvage's proposed experts (Dkt. 25).

SO ORDERED.

Dated: September 25, 2024  
Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge